**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:24-cr-107 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| JASON WADE | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| | ) | |

---

**MEMORANDUM OPINION AND ORDER**

---

Before the Court is Defendant Jason Wade's motion to suppress the statement he made to law enforcement on July 25, 2024, and the firearm recovered by law enforcement after that statement. (Doc. 37.) On August 11, 2026, United States Magistrate Judge Dumitru held a hearing on Defendant's motion to suppress (Doc. 62) and, on September 9, 2026, he issued a report and recommendation ("R&R"), recommending that the Court deny Defendant's motion to suppress (Doc. 65). Defendant raised four objections to the R&R (Doc. 66), and those objections are now before the Court.

## I. BACKGROUND

A federal grand jury returned an indictment charging Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1, at 1.) Defendant filed a motion to suppress the statement he gave to law enforcement during a custodial interrogation on July 25, 2024, arguing that he was not properly informed of his *Miranda* rights and his statements were otherwise coerced and involuntary. (Doc. 66.)

Magistrate Judge Dumitru heard argument on the motion and entered an R&R (Doc. 65). In his R&R, Magistrate Judge Dumitru found that: (1) Defendant was properly advised of his

*Miranda* rights, (2) Defendant knowingly and voluntarily waived those rights, and (3) Defendant's statements were not improperly coerced. (Doc. 65, at 10–20.)

After reviewing the evidence presented during the suppression hearing *de novo*, the Court finds the facts set forth in the R&R consistent with the evidence presented. Defendant did not object to Magistrate Judge Dumitru's recitation of the facts, but only to the legal conclusions he derived from those facts. (Doc. 66.) Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set forth in the R&R (Doc. 65, at 1–8). *See, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2015). The Court will refer to the facts only as necessary to analyze the issues raised in Defendant's objections to the R&R.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

As to credibility of witness testimony, *de novo* review does not require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is, therefore, entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th

Cir. 1999); *Raddatz*, 447 U.S. at 676 ("Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

## III. ANALYSIS

At the evidentiary hearing, the magistrate judge heard testimony from four witnesses: (1) former 10th Judicial Drug Task Force Special Agent Matt Bales ("Agent Bales"), (2) Bureau of Alcohol, Tobacco, and Firearms Special Agent Adam Baldwin ("Agent Baldwin"), (3) Defendant's girlfriend at the time of his arrest, Heather Qualls, and (4) Defendant. The magistrate judge found both Agent Bales and Agent Baldwin to be credible.

Defendant objects to: (1) "[t]he Magistrate Judge's factual finding that Agent Baldwin advised Mr. Wade of his *Miranda* rights fully and completely prior to his custodial interview;" (2) "[t]he Magistrate Judge's finding that that any *Miranda* warning Agent Baldwin provided during his initial interaction with Mr. Wade 'carried over' to Mr. Wade's subsequent custodial interview by Agent Baldwin and Agent Bales;" (3) "[t]he Magistrate Judge's finding that Mr. Wade made a voluntary, knowing, and intelligent waiver of his *Miranda* rights;" and (4) "[t]he Magistrate Judge's conclusion that 'the Government has carried its burden of proving the voluntariness of Defendant's statement and *Miranda* waiver by a preponderance of the evidence.'" (Doc. 66, at 2–6.)

### A. The R&R properly found that Defendant was provided a *Miranda* warning.

Defendant objects to the Magistrate Judge's finding that the officers advised Defendant of his *Miranda* rights.

If a statement is given without an attorney present, the Government bears the burden of demonstrating that *Miranda* warnings were properly given and "a heavy burden rests on the

government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Ariz.*, 384 U.S. 436, 475 (1966) (citing *Escobedo* v. *Illinois*, 378 U.S. 478, 490 n.14 (1964)).

Defendant's objection rests on the fact that there is not a full audio recording of Defendant being read his *Miranda* rights. (Doc. 66, at 2–3.) This fact is undisputed, and the Magistrate Judge acknowledged as much. (*See* Doc. 65, at 4) ("[T]he entire conversation is not captured."). Federal law does not require "suppression solely on the basis that a police interrogation was not electronically recorded." *Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007). When "no note, audio recording, or written form is available to corroborate that [the officer] read [Defendant] his *Miranda* rights, the Court must assess the credibility of testimony at the evidentiary hearing to determine if the Government met its burden." *United States v. Kemp*, No. 17-20712, 2018 WL 3198545, at *2 (E.D. Mich. June 29, 2018). To challenge a credibility finding, Defendant must show that the credibility determination is clearly erroneous. *United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990).

In determining that Defendant received *Miranda* warnings before his custodial interrogation began, the magistrate judge relied on video evidence and sworn testimony from the August 11, 2026, hearing. Although the video and audio recording is incomplete, parts of the recording played during the suppression hearing include Agent Baldwin stating, "let me read you your rights real quick" and "right to remain silent." (Video, at 17:47:18–26.) Agent Baldwin testified that he fully *Mirandized* Defendant and Defendant acknowledged the warnings. (Doc. 65, at 4.) Agent Bales testified that he heard "bits and pieces" of the *Miranda* warning. (*Id.*) Defendant, however, testified that he had no recollection of his *Miranda* rights being read to him. (*Id.* at 5.)

In this case, the Court agrees with Magistrate Judge Dumitru's determination that Defendant received appropriate *Miranda* warnings. The Government bears the burden of proof that a *Miranda* warning was given, which it satisfied by soliciting sworn testimony from two officers who were on the scene. The Government's presentation of testimonial evidence shifted the burden to Defendant, who failed to present any controverting evidence or impeachment to their testimony other than his testimony that he did not recall receiving *Miranda* warnings. Coupled with the magistrate judge's finding that Agent Baldwin and Agent Bales were credible witnesses, the Court finds that the Government sufficiently met its burden of demonstrating that the warnings were properly given and the Magistrate Judge's finding was not clearly erroneous. (Doc. 65, at 10.)

Moreover, the video evidence, though incomplete, does highly suggest that the warnings were given. Further, even without the audio evidence, the Magistrate Judge made a credibility determination based on the relevant parties' sworn testimony. The Court does not second-guess the credibility determinations of the Magistrate Judge, nor does Defendant submit any evidence or reason to do so. *See Irorere*, 69 Fed. App'x at 236; *Raddatz*, 447 U.S. at 676. Therefore, Defendant's first objection is overruled.

**B. The R&R properly found the *Miranda* warning "carried over."**

Defendant next objects to the magistrate judge's R&R to the extent he found that his initial *Miranda* warnings carried over to a subsequent custodial interrogation. (Doc 66, at 3.)

When a custodial interview is broken into multiple parts, "additional [*Miranda*] warnings are only required if the circumstances seriously changed between the initial warnings and the interrogation." *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010) (citing *Wyrick v. Fields*, 459 U.S. 42, 47 (1982) (per curiam)). In considering whether the original warnings "carried over,"

courts "consider the 'totality of the circumstances,' weighing several factors, no one of which is determinative." *United States v. Otero*, No. 24-3549, 2025 WL 2662274, at *4 (6th Cir. Sept. 17, 2025) (citing *United States v. Weekley*, 130 F.3d 747, 750–51 (6th Cir. 1997)). These factors include "the amount of time elapsed between the reading of *Miranda* rights and the questioning, whether the suspect was readvised of his *Miranda* rights, and whether anything occurred that affected the suspect's understanding of the warnings given him and his right to request counsel or to remain silent." *Id.* (citing *Weekley*, 130 F.3d at 751; *Treesh*, 612 F.3d at 432).

Here, Agent Baldwin first conducted a custodial interview while Defendant was in a law enforcement vehicle. After a brief break, law enforcement moved Defendant out of the vehicle to a nearby spot in the backyard of the residence. Agent Baldwin and Agent Bales proceeded to conduct a field interview, which lasted approximately eighteen minutes. There was no audio or video evidence presented during the suppression hearing regarding what occurred during the break between questioning.

In his R&R, the magistrate judge found "that the field interview occurred only approximately ten minutes after the initial *Miranda* warning in the Vehicle." (Doc. 65, at 12.) Defendant objects, asserting that "a significantly longer period of time passed between his initial interaction with Agent Baldwin and the subsequent field interview." (Doc. 66, at 3.) However, this distinction is immaterial. Even if thirty minutes had passed, it still would not have eclipsed the temporal gaps that have been found permissible. *See Treesh*, 612 F.3d at 432 (collecting cases). Additionally, Agent Bales reminded Defendant of his *Miranda* rights before starting the renewed questioning. (Audio, at 00:42) ("He [Baldwin] told you your rights, you remember your rights, all that good stuff, right?"). And the Court found Defendant was properly advised of his *Miranda* rights in the earlier interaction. (*See supra* Section III.A.)

Defendant next asserts that "the field interview was conducted under substantially more coercive surroundings than the initial encounter." (Doc. 66, at 3.) The R&R found that "the circumstances were largely unchanged" and "nothing significant occurred between the initial *Miranda* warning and the subsequent reminder." (Doc. 65, at 12.) Defendant points to his removal from the vehicle and the presence of armed officers as evidence the interview had a "coercive nature." (Doc. 66, at 3.) But neither moving from the car to outside, nor the continued presence of officers at the scene, would alter Defendant's understanding that the *Miranda* warnings were operative, especially since he was reminded of them at the new location. Lastly, the fact that other officers remained in the vicinity and were armed did not change from the first warnings. Thus, the Court agrees with the magistrate judge's determination that the circumstances had not changed to a degree that warranted readvising Defendant of his *Miranda* rights. *Treesh*, 612 F.3d at 432. Therefore, Defendant's second objection is overruled.

### C. The R&R properly found that Defendant knowingly and voluntarily waived his rights.

Defendant next objects to the magistrate judge's finding that Defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights prior to making statements to law enforcement. Specifically, Defendant suggests that his mental state at the time, the coercive atmosphere during the interview, coercive investigation tactics by law enforcement, and his request for counsel show he did not waive his *Miranda* rights.

The Court assesses two factors in determining whether a Defendant properly waived his rights:

> First, whether the right was relinquished voluntarily turns on whether the waiver was the product of a "free and deliberate choice" rather than the result of "intimidation, coercion, or deception." Second, whether it was knowingly and intelligently waived turns on a determination that the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*United States v. Hampton*, 572 F. App'x 430, 433 (6th Cir. 2014) (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)) (internal citation omitted).

"[T]o determine the voluntariness of a statement, courts must 'evaluate the totality of the circumstances.'" *Dawson-Durgan v. Shoop*, No. 23-3610, 2024 U.S. App. LEXIS 4910, at *4 (6th Cir. Feb. 29, 2024) (quoting *Michael v. Butts*, 59 F.4th 219, 227 (6th Cir. 2023)). Silence does not imply a waiver. *Miranda*, 384 U.S. at 475. However, the privilege may be waived if the individual answers some questions or gives some information on his own. *Id.*; *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.")

To determine whether the waiver was knowing and intelligent, the Court also consider[s] the "totality of the circumstances surrounding the interrogation." *Hampton*, 572 F. App'x at 433 (quoting *Moran,* 475 U.S. at 421). Specifically, "courts consider the defendant's age, education, intelligence, prior experience with the criminal justice system, the length and nature of the questioning, the advice regarding *Miranda* rights, and the use of physical punishment, such as deprivation of food or sleep." *Id.* (quoting *Murphy v. Ohio,* 551 F.3d 485, 511 (6th Cir. 2009)).

**1. Defendant's mental state**

"In cases involving sleep deprivation or intoxication, courts most often focus on the perceptions of the involved officers and not the defendant's state of mind, in order to determine whether a defendant's statement is 'knowing' and 'voluntary.'" *Id.* at 434. This is because the Supreme Court, in *Colorado v. Connelly,* 479 U.S. 157, 170 (1986), explained that the Fifth Amendment, and subsequently *Miranda*, were specifically intended to combat *governmental* coercion and not simply any factors that might impair reasoning. In *Connelly*, although the

defendant was experiencing a psychotic state, he presented normally to law enforcement and seemed to fully comprehend the nature of his actions. *Id.* at 160–61. The Court reasoned that there was no state coercion violating the defendant's constitutional rights, and thus his statement should not be suppressed on Fifth Amendment grounds. *Id.*; *see also Wernert v. Arn,* 819 F.2d 613, 616 (6th Cir. 1987) (upholding admission of a confession even though defendant claimed that her drug and alcohol ingestion the day before and her lack of food and sleep prohibited her from voluntarily waiving her rights).

Regardless of whether a defendant may be intoxicated or sleep deprived, "the important inquiry is whether the interviewing officers perceived there to be any 'impairments' to a knowing and intelligent waiver, when the totality of the circumstances are considered." *Hampton*, 572 F. App'x at 435. In *Hampton*, the Court found it sufficient that the defendant appeared "alert and lucid," "his responses were coherent," and he did not "appear[] sleepy or otherwise disoriented" or intoxicated. *Id.* (internal quotations omitted); *see also United States v. Dunn*, 269 F. App'x 567, 573 (6th Cir. 2008) (finding waiver knowing and intelligent when audio recording depicted defendant as "alert, coherent, and lucid" despite drug use).

Here, Defendant asserts that his state of "sleep deprivation, methamphetamine intoxication, and mental health condition at the time of the interview" rendered his statements not voluntary, knowing, and intelligent. (Doc. 66, at 4.) Whether Defendant was "high as hell" on drugs or not is unclear. (*See id.*) But this objective fact is not dispositive, nor is whether Defendant had truly been awake for several days with only a few hours of sleep. The Court looks to the officer's perception of Defendant at the time of the interview. *Hampton*, 572 F. App'x at 433. Based on the audio and video evidence, Defendant appeared able to coherently conduct himself and comprehend what was asked of him. He proficiently followed directions

and the course of conversation. There was no perceptible evidence of mental impairment presented, and, at the hearing, the Agents testified to the same. Accordingly, Defendant's physical and mental state do not suggest that his statements to law enforcement were made unknowingly or involuntarily.

**2. Coercive atmosphere and tactics**

"When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *United States v. Mahan,* 190 F.3d 416, 422 (6th Cir. 1999) (internal quotations and citation omitted). "Not all psychological tactics are unconstitutional." *Id.* (quoting *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir.1994)). The Sixth Circuit Court of Appeals has established three requirements for finding that a confession was involuntary due to coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Id.* (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)).

First, Defendant argues that the field interview was conducted under a coercive atmosphere. (Doc. 66, at 5.) In support, Defendant points to "evidence that multiple law enforcement officers were present at the scene armed with AR-15 rifles and . . . the proximity of armed officers during the interview." (*Id.*)

In *McCall v. Dutton*, the court found that there was no coercive police activity despite the presence of armed officers. 863 F.2d at 459. This was because "it was uncontroverted that the display of weapons was not intended to 'extort' a confession by coercive means." *Id.* at 459–60. Rather, "the weapons were carried as a 'protective measure' employed against a dangerous

fleeing felon" and "petitioner offered no evidence to prove that this explanation was pretextual." *Id*. at 460. The *McCall* Court thus concluded that "the mere display of weapons does not justify suppression of petitioner's statements." *Id.*

Similarly, here, law enforcement officers on the scene were carrying firearms since Defendant was considered potentially armed and dangerous. (Doc. 65, at 2.) But there is no evidence that, after the arrest, any firearms were drawn, pointed at Defendant, or any threats were made by brandishing or alluding to the weapons. There are no allegations that the agents conducting the interview brandished or referenced their firearms during questioning. Defendant does not suggest the presence of armed officers for the operation was pretextual and there is no evidence suggesting the armed officers who remained on the scene created a coercive environment during the custodial interview. Further, Defendant has a significant criminal history and experience interacting with law enforcement. *See* Doc. 1 at 1. Additionally, during the questioning, he was outdoors, away from other individuals, allowed to smoke a cigarette, reminded of his rights, and only questioned for approximately eighteen minutes. All of these facts weigh against finding that he was questioned in a coercive environment.

Second, Defendant argues the Agents used coercive tactics during the interview, including a "broken or illusory promise," a "coercive suggestion" regarding prosecution against him and his girlfriend contingent upon his cooperation, and Agent Baldwin's "threatening tone and profanity." (Doc. 66, at 5.)

It is well-recognized that "there is nothing inherently wrong with efforts to create a favorable climate for confession. Neither 'mere emotionalism and confusion,' nor mere 'trickery' will alone necessarily invalidate a confession." *Ledbetter*, 35 F.3d at 1069 (quoting *Hawkins v. Lynaugh,* 844 F.2d 1132, 1140 (5th Cir. 1988)). Most relevant here,

> [P]romises of leniency are coercive only "if they are broken or illusory[.]" *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (quoting *United States v. Johnson*, 351 F.3d at 261–62). "[A]n illusory promise is a statement in the form of a promise, but lacking its substance in that it does not actually commit the police to undertake or refrain from any particular course of action." *Id.* (quoting *Johnson*, 351 F.3d at 262, n. 1). The Sixth Circuit has ruled that "promises to recommend leniency and speculation that cooperation will have a positive effect do not make subsequent statements involuntary." *Id.* at 271–72 (quoting *United States v. Delaney*, 443 F. App'x 122, 129 (6th Cir. 2011) (citation and internal quotation marks omitted)). Thus, a promise of leniency made by the police in exchange for a defendant's cooperation are usually permissible. *Id.*

*Wingard v. Cheeks*, No. 2:22-CV-10488, 2023 WL 2563725, at *5 (E.D. Mich. Mar. 17, 2023).

In *United States v. Binford*, the defendant argued the officer's statements "were objectively coercive because they implied that Binford could escape prosecution by waiving his right to remain silent." 818 F.3d 261, 271 (6th Cir. 2016). The *Binford* Court found the statement was not objectively coercive because there was no broken or illusory promise. *Id.* at 272. The officer "committed [] to undertake a specific course of action in return for [] cooperation," had the authority to do so, and there was no evidence the officer broke that promise. *Id.*

Similarly, in *United States v. Delaney*, law enforcement agents made statements during a custodial interrogation explaining that, if the defendant cooperated and told the truth, he would receive a lesser sentence under the federal sentencing guidelines and that his chances of going home that day were greater. 443 F. App'x 122, 129 (6th Cir. 2011). The court found those were permissible promises of possible leniency because, while the statements were made with the intent to compel defendant to testify, they were not false. *Id.*

On the other hand, in *United States v. Siler*, 526 F. App'x 573, 576 (6th Cir. 2013), a promise was deemed coercive because there was an explicit promise that "no one would be

charged," the investigator made legally inaccurate statements as to his authority to bind or influence the prosecution process and broke his promises regardless.

Here, Defendant argues that Agent Baldwin's conduct was coercive in telling Defendant that "your cooperation could make a difference," he could have a "bargaining chip," and telling a story of a different case where a prosecutor did not prosecute an offense when there were similar circumstances and cooperation. (Doc. 66, at 5; Audio, at 1:14–1:45, 2:34–40.) Agent Baldwin explained what advantages come with cooperation, such as "giving them something to look at" and "hearing his side of the story." (Audio at 1:14–1:45, 2:34–40.) Agent Baldwin told Defendant that, if he does not show good faith in the investigation, giving information, then he cannot go make a helpful recommendation to the United States Attorney's Office. After Defendant had been equivocating for a couple minutes, Agent Barnes took a more assertive approach and told Defendant "he is not playing around" and demanded he tell him where the gun is located. (*Id.* 15:20–35.)

The facts of this case are similar to those in *Binford* and *Delaney* and not to those in *Siler*. First, it is not clear Agent Baldwin made any promises, as opposed to informative statements letting Defendant weigh his options and know what advantages may come with cooperation. However, to the extent any promises were made, Officer Barnes had the authority to pass information to the United States Attorney. And there are no allegations that he did not fulfill this promise. While Agent Baldwin did tell Defendant a story with a positive outcome, he was clear that the situation was different and that he did not know definitively what would happen to Defendant or what the U.S. Attorney would charge or not charge. To the extent any statements are construed as a promise, they were to inform Defendant that cooperation provided certain avenues to explain his side of the story, which could result in him receiving a more advantageous

outcome. And it is true that if Defendant's statements were accurate and he were able to convince the U.S. Attorneys that he had and used the gun merely for self-defense, it could result in a more lenient charge. The Court does not find that Defendant was coerced by broken or illusory promises.

Turning to a totality-of-the-circumstances analysis, the conversation between Campbell and the detectives was open, polite, and nonconfrontational. The interrogation lasted fewer than twenty minutes, and nothing indicates that there was any sort of punishment or deprivation. Defendant understood the implications of speaking to the authorities, as evidenced by his criminal background and audibly questioning "what are my chances?" (Audio, at 10:48–10:52.) Neither the environment nor the Agent's tactics were intimidating or coercive as to overbear Defendant's will or be the primary motivating factor behind his decision to make statements to law enforcement.

**3. Defendant's request for counsel**

In *Davis v. United States,* 512 U.S. 452 (1994), the Supreme Court set forth the standard under *Miranda* for asserting a constitutional right to counsel:

> The applicability of the "'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused *actually invoked* his right to counsel." To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not."

*Id.* at 458–59 (internal citations omitted).

In *Davis,* a suspect said to his questioners during an interrogation, "Maybe I should talk to a lawyer." *Id.* at 462. The Court held that such a statement was too ambiguously worded to

require that questioning cease. *Id.* Further, in *Ledbetter*, the court found the defendant's statement that "it would be nice" to have an attorney was even more ambiguous and equivocal than the statement in *Davis*. 35 F.3d at 1070.

Here, Defendant testified that, at some point in the middle of the questioning, he stated, "I believe I need an attorney." This statement does not unambiguously request counsel. Nor is there a record of the request beyond Defendant's testimony. Defendant, having been informed of his rights, waived the privilege.

For all the above reasons, Defendant's third objection is overruled.

**D. The R&R properly found the Government carried its burden**

Finally, Defendant objects to the Magistrate Judge's finding that the Government carried its burden of proving the voluntariness of Defendant's statement and *Miranda* waiver by a preponderance of the evidence. (Doc. 66, at 6.) Defendant asserts that "the Government did not carry its burden to prove that his statement and *Miranda* waiver were voluntary." (*Id.*)

The Government bears the burden of proving—by a preponderance of the evidence—the voluntariness of both an accused's *Miranda* waiver and confession. *Binford*, 818 F.3d at 271 (citing *Connelly,* 479 U.S. at 168–69). "The test for whether a Miranda waiver is voluntary is essentially the same as the test for whether a confession is voluntary." *Id.* (quoting *United States v. Redditt,* 87 F. App'x 440, 445 (6th Cir. 2003)).

As explained above, the Court found that Defendant's statements were not the product of coercion. For the same reasons, the Court finds that Defendant's *Miranda* waiver was voluntary. Defendant was read his rights, has a history with the criminal justice system such that he would have encountered *Miranda* rights before, was otherwise conducting an intelligent, lucid

conversation with law enforcement, and showed no outward objective signs of impairment. Accordingly, Defendant's fourth objection is overruled.

## IV. CONCLUSION

The Court finds the Magistrate Judge's factual findings to be supported by the weight of the evidence and his legal analysis to be correct under the relevant law. Accordingly, Defendant's objections (Doc. 66) are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the Magistrate Judge's R&R (Doc. 65), and **DENIES** Defendant's motion to suppress (Doc. 37).

**SO ORDERED.**

/s/ ***Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**